ALAN R. BRAYTON, ESQ., S.B. #73685
DAVID R. DONADIO, ESQ., S.B. #154436
BRAYTON❖PURCELL LLP
Attorneys at Law
222 Rush Landing Road
P.O. Box 6169
Novato, California 94948-6169
(415) 898-1555
(415) 898-1247 (Fax No.)

Attorneys for Plaintiff

THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

RUDOLPH HANNA,

    Plaintiff,

vs.

GENERAL ELECTRIC COMPANY,
TODD SHIPYARDS CORPORATION,
NATIONAL STEEL AND
SHIPBUILDING COMPANY,

    Defendants.

CV No. 08    0980

COMPLAINT FOR ASBESTOS
PERSONAL INJURY/ PRODUCTS
LIABILITY;

DEMAND FOR JURY TRIAL

**I.**

**PARTIES**

    1.    Plaintiff in this action, RUDOLPH HANNA has sustained asbestos-related lung injuries as a result of his inhalation of asbestos fibers through his occupational exposure to asbestos.

    2.    Plaintiff sustained an asbestos-related lung disease by the inhalation of asbestos fibers released during the handling of asbestos-containing products at Plaintiff's jobsites.

    3.    The pathogenesis of Plaintiff's asbestos-related diseases is explained on **Exhibit A**, attached to Plaintiff's complaint and incorporated by reference herein.

4.   All of Plaintiff's claims arise out of repeated exposure to asbestos-containing products manufactured, distributed, and/or sold by defendants and supplied to, installed and/or maintained by defendants at Plaintiff's worksites, over a period of years, caused from release of toxic asbestos fibers and subsequent inhalation by the Plaintiff, resulting in cumulative, progressive, incurable lung diseases.

5.   Plaintiff claims damages for an asbestos-related disease arising from a series of occurrences not dependent on Plaintiff's worksite but on the fact that asbestos-containing products, when handled in the manner in which they were intended, released harmful asbestos fibers which when inhaled by Plaintiff, caused serious lung disease.

6.   As used herein, Plaintiff shall mean the above-captioned asbestos-injured Plaintiff.

7.   Plaintiff is informed and believes, and thereon alleges that at all times herein mentioned, Defendants were and are corporations, partnerships, unincorporated associations, sole proprietorships and/or other business entities organized and existing under and by virtue of the laws of the State of California, or the laws of some other state or foreign jurisdiction, and that said defendants, and each of them, were and are authorized to do and are doing business in the State of California, and that said defendants have regularly conducted business in the County of San Francisco, State of California.

## II.

## JURISDICTION, VENUE AND INTRADISTRICT ASSIGNMENT

8.   <u>Jurisdiction</u>: Plaintiff RUDOLPH HANNA is a citizen of the State of Oregon. Defendant GENERAL ELECTRIC COMPANY is a corporation incorporated under the laws of the State of New York and having its principal places of business in the State of Connecticut. Defendant TODD SHIPYARDS CORPORATION is a corporation incorporated under the laws of , and having its principal places of business in the State of Washington. Defendant NATIONAL STEEL AND SHIPBUILDING COMPANY is a corporation incorporated under the laws of and having its principal places of business in California.

//

K:\Injured\106929\FED\Cmp FED (PI solo) no doe.wpd       2
COMPLAINT

1  This Court has original jurisdiction under 25 USC § 1332, in that it is a civil action
2  between citizens of different states in which the matter in controversy exceeds, exclusive of costs
3  and interest, seventy-five thousand dollars.
4       9.    <u>Venue / Intradistrict Assignment</u>. Venue is proper in the Northern District of
5  California and assignment to the San Francisco Division of said district is proper as a substantial
6  part of the events or omissions which give rise to the claims asserted by Plaintiff herein occurred
7  within the County of San Francisco, California, and Defendants are subject to personal
8  jurisdiction in this district at the time the action is commenced.

## III.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

(Negligence)

PLAINTIFF RUDOLPH HANNA COMPLAINS OF DEFENDANTS GENERAL ELECTRIC COMPANY, TODD SHIPYARDS CORPORATION, NATIONAL STEEL AND SHIPBUILDING COMPANY, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AND FOR A CAUSE OF ACTION FOR NEGLIGENCE ALLEGES:

17    10.   At all times herein mentioned, each of the named defendants was the successor, successor in business, successor in product line or a portion thereof, assign, predecessor, predecessor in business, predecessor in product line or a portion thereof, parent, holding company, affiliate, venturer, co-venturer, subsidiary, wholly or partially owned by, or the whole or partial owner of or member in an entity researching, studying, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, testing, authorizing, approving, certifying, facilitating, promoting, representing, endorsing servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or otherwise directing and/or facilitating the use of, or advertising a certain product, namely asbestos, and/or other products containing asbestos. Said entities shall hereinafter collectively be called ALTERNATE ENTITIES. Each of the herein named defendants is liable for the tortious

1    conduct of each successor, successor in business, successor in product line or a portion thereof,
2    assign, predecessor in product line or a portion thereof, parent, holding company, affiliate,
3    venturer, co-venturer, subsidiary, whole or partial owner, or wholly or partially owned entity, or
4    entity that it was a member of, or funded, that researched, studied, manufactured, fabricated,
5    designed, modified, labeled, assembled, distributed, leased, bought, offered for sale, supplied,
6    sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted,
7    rebranded, manufactured for others and advertised a certain product, namely asbestos, and other
8    products containing asbestos. The following defendants, and each of them, are liable for the acts
9    of each and every ALTERNATE ENTITY, and each of them, in that there has been a virtual
10   destruction of plaintiff's remedy against each such ALTERNATE ENTITY; defendants, and each
11   of them, have acquired the assets, product line, or a portion thereof, of each such ALTERNATE
12   ENTITY; defendants, and each of them, caused the destruction of plaintiff's remedy against each
13   such ALTERNATE ENTITY; each such defendant has the ability to assume the risk-spreading
14   role of each such ALTERNATE ENTITY; and that each such defendant enjoys the goodwill
15   originally attached to each such ALTERNATE ENTITY:

| DEFENDANT | ALTERNATE ENTITY |
|---|---|
| GENERAL ELECTRIC COMPANY | MATTERN X-RAY<br>HOTPOINT ELECTRIC APPLIANCE COMPANY LIMITED<br>TRUMBULL ELECTRIC MANUFACTURING COMPANY<br>G E INDUSTRIAL SYSTEMS<br>CURTIS TURBINES<br>PARSONS TURBINES<br>GENERAL ELECTRIC JET ENGINES |
| TODD SHIPYARDS CORPORATION | TODD PACIFIC SHIPYARDS CORPORATION<br>SEATTLE-TACOMA SHIPBUILDING CORP. |

23           11.    At all times herein mentioned, defendants, their ALTERNATE ENTITIES, and
24   each of them, were and are engaged in the business of researching, manufacturing, fabricating,
25   designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale,
26   supplying, selling, inspecting, endorsing, testing, authorizing, approving, certifying, facilitating,
27   promoting, representing, servicing, installing, contracting for installation, repairing, marketing,
28   warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating,

or otherwise directing and/or facilitating the use of, or advertising a certain product, namely asbestos and other products containing asbestos.

12. At all times herein mentioned, defendants, their ALTERNATE ENTITIES and each of them, singularly and jointly, negligently, and carelessly researched, manufactured, fabricated, designed, modified, tested or failed to test, abated or failed to abate, warned or failed to warn of the health hazards, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, authorized, approved, certified, facilitated, promoted, installed, represented, endorsed, contracted for installation of, repaired, marketed, warranted, rebranded, manufactured for others, packaged and advertised, a certain product, namely asbestos, and other products containing asbestos, in that said products caused personal injuries to users, consumers, workers, bystanders and others, including the plaintiff herein, (hereinafter collectively called "exposed persons"), while being used in a manner that was reasonably foreseeable, thereby rendering said products hazardous, unsafe and dangerous for use by "exposed persons".

13. Defendants, their ALTERNATE ENTITIES, and each of them, had a duty to exercise due care in the pursuance of the activities mentioned above and defendants, and each of them, breached said duty of due care.

14. Defendants, their ALTERNATE ENTITIES and each of them, knew, or should have known, and intended that the aforementioned asbestos and products containing asbestos and related products and equipment, would be transported by truck, rail, ship, and other common carriers, that in the shipping process the products would break, crumble, or be otherwise damaged; and/or that such products would be used for insulation, construction, plastering, fireproofing, soundproofing, automotive, aircraft and/or other applications, including, but not limited to unpacking, preparing, using, sawing, drilling, chipping, hammering, scraping, sanding, breaking, removing, maintaining, inspecting, "rip-out", and other manipulation, resulting in the release of airborne asbestos fibers, and that through such foreseeable use and/or handling "exposed persons", including plaintiff herein, would use or be in proximity to and exposed to said asbestos fibers, which contaminated the packaging, products, environment, and clothing of

persons working in proximity to said products, directly or through reentrainment.

15. Plaintiff have used, handled, or been otherwise exposed to asbestos and asbestos-containing products referred to herein in a manner that was reasonably foreseeable. Plaintiff's exposure to asbestos and asbestos-containing products is on current information as set forth at various locations and circumstances in **Exhibit A**, attached to plaintiff's complaint and incorporated by reference herein.

16. As a direct and proximate result of the acts, omissions, and conduct of the defendants, their ALTERNATE ENTITIES, and each of them, as aforesaid, Plaintiff's exposure to asbestos and asbestos-containing products caused severe and permanent injury, damage, loss, or harm to the plaintiff as set forth in **Exhibit A,** attached to Plaintiff's complaint and incorporated by reference herein.

17. Plaintiff is informed and believes, and thereon alleges, that progressive lung disease, cancer, and other serious diseases are caused by inhalation or ingestion of asbestos fibers without perceptible trauma and that said injury, damage, loss, or harm results from exposure to asbestos and asbestos-containing products over a period of time.

18. Plaintiff suffers from a condition related to exposure to asbestos and asbestos-containing products. Plaintiff was not aware at the time of exposure that asbestos or asbestos-containing products presented risk of injury and/or disease.

19. As a direct and proximate result of the aforesaid conduct of defendants, their ALTERNATE ENTITIES, and each of them, Plaintiff has suffered, and continue to suffer, permanent injuries and/or future increased risk of injuries to their persons, body and health, including, but not limited to, asbestosis, other lung damage, and cancer, and the mental and emotional distress attendant thereto, from the effect of exposure to asbestos fibers, all to Plaintiff's general damage.

20. As a direct and proximate result of the aforesaid conduct of the defendants, their "alternate entities," and each of them, Plaintiff has incurred, is presently incurring, and will incur in the future, liability for physicians, surgeons, nurses, hospital care, medicine, hospices, x-rays and other medical treatment, the true and exact amount thereof being unknown to Plaintiff at this

1  time, and Plaintiff prays leave to amend this complaint accordingly when the true and exact cost
2  thereof is ascertained.
3      21.    As a further direct and proximate result of the said conduct of the defendants,
4  their "alternate entities," and each of them, Plaintiff has incurred pecuniary losses, the full nature
5  and extent of which are not yet known to Plaintiff; and leave is requested to amend this
6  complaint to conform to proof at the time of trial.
7      22.    Defendants, their ALTERNATE ENTITIES, and each of them, and their officers,
8  directors and managing agents participated in, authorized, expressly and impliedly ratified, and
9  had full knowledge of, or should have known of, each of the acts set forth herein.
10     23.    Defendants, their "alternate entities," and each of them, are liable for the
11 fraudulent, oppressive, and malicious acts of their ALTERNATE ENTITIES, and each of them,
12 and each defendant's officers, directors and managing agents participated in, authorized,
13 expressly and impliedly ratified, and had full knowledge of, or should have known of, the acts of
14 each of their ALTERNATE ENTITIES as set forth herein.
15     24.    The herein-described conduct of said defendants, their ALTERNATE ENTITIES,
16 and each of them, was and is willful, malicious, fraudulent, outrageous and in conscious
17 disregard and indifference to the safety and health of "exposed persons". Plaintiff, for the sake of
18 example and by way of punishing said defendants, seeks punitive damages according to proof.
19     WHEREFORE, Plaintiff prays judgment against defendants, their "alternate entities," and
20 each of them, as hereinafter set forth.

## SECOND CAUSE OF ACTION
### (Products Liability)

23 AS AND FOR A SECOND, SEPARATE, FURTHER AND DISTINCT CAUSE OF
24 ACTION FOR PRODUCTS LIABILITY, PLAINTIFF RUDOLPH HANNA COMPLAINS OF
25 DEFENDANTS GENERAL ELECTRIC COMPANY, TODD SHIPYARDS CORPORATION,
26 NATIONAL STEEL AND SHIPBUILDING COMPANY, THEIR "ALTERNATE ENTITIES,"
27 AND EACH OF THEM, AS FOLLOWS:
28     25.    Plaintiff incorporates herein by reference, as though fully set forth herein, the

allegations contained in each paragraph of the First Cause of Action herein.

26. Defendants, their ALTERNATE ENTITIES, and each of them, knew and intended that the above-referenced asbestos and asbestos-containing products would be used by the purchaser or user without inspection for defects therein or in any of their component parts and without knowledge of the hazards involved in such use.

27. Said asbestos and asbestos-containing products were defective and unsafe for their intended purpose in that the inhalation of asbestos fibers causes serious disease and/or death. The defect existed in the said products at the time they left the possession of defendants, their "alternate entities," and each of them. Said products did, in fact, cause personal injuries, including asbestosis, other lung damage, and cancer to "exposed persons", including Plaintiff herein, while being used in a reasonably foreseeable manner, thereby rendering the same defective, unsafe and dangerous for use.

28. "Exposed persons" did not know of the substantial danger of using said products. Said dangers were not readily recognizable by "exposed persons". Said defendants, their ALTERNATE ENTITIES, and each of them, further failed to adequately warn of the risks to which Plaintiff and others similarly situated were exposed.

29. In researching, manufacturing, fabricating, designing, modifying, testing or failing to test, warning or failing to warn, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging and advertising asbestos and asbestos-containing products, defendants, their ALTERNATE ENTITIES, and each of them, did so with conscious disregard for the safety of "exposed persons" who came in contact with said asbestos and asbestos-containing products, in that said defendants, their ALTERNATE ENTITIES, and each of them, had prior knowledge that there was a substantial risk of injury or death resulting from exposure to asbestos or asbestos-containing products, including, but not limited to, asbestosis, other lung damages and cancer. Said knowledge was obtained, in part, from scientific studies performed by, at the request of, or with the assistance of, said defendants, their ALTERNATE ENTITIES, and each of them, and which knowledge was obtained by said

defendants, their ALTERNATE ENTITIES, and each of them on or before 1930, and thereafter.

30. On or before 1930, and thereafter, said defendants, their ALTERNATE ENTITIES and each of them, were aware that members of the general public and other "exposed persons", who would come in contact with their asbestos and asbestos-containing products, had no knowledge or information indicating that asbestos or asbestos-containing products could cause injury, and said defendants, their ALTERNATE ENTITIES, and each of them, knew that members of the general public and other "exposed persons", who came in contact with asbestos and asbestos-containing products, would assume, and in fact did assume, that exposure to asbestos and asbestos-containing products was safe, when in fact said exposure was extremely hazardous to health and human life.

31. With said knowledge, said defendants, their ALTERNATE ENTITIES, and each of them, opted to research, manufacture, fabricate, design, modify, label, assemble, distribute, lease, buy, offer for sale, supply, sell, inspect, service, install, contract for installation, repair, market, warrant, rebrand, manufacture for others, package and advertise said asbestos and asbestos-containing products without attempting to protect "exposed persons" from or warn "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and asbestos-containing products. Rather than attempting to protect "exposed persons" from, or warn "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and asbestos-containing products, defendants, their ALTERNATE ENTITIES, and each of them, intentionally failed to reveal their knowledge of said risk, and consciously and actively concealed and suppressed said knowledge from "exposed persons" and members of the general public, thus impliedly representing to "exposed persons" and members of the general public that asbestos and asbestos-containing products were safe for all reasonably foreseeable uses. Defendants, their ALTERNATE ENTITIES, and each of them, engaged in this conduct and made these implied representations with the knowledge of the falsity of said implied representations.

32. The above-referenced conduct of said defendants, their ALTERNATE ENTITIES, and each of them, was motivated by the financial interest of said defendants, their ALTERNATE ENTITIES, and each of them, in the continuing, uninterrupted research, design, modification,

manufacture, fabrication, labeling, assembly, distribution, lease, purchase, offer for sale, supply, sale, inspection, installation, contracting for installation, repair, marketing, warranting, rebranding, manufacturing for others, packaging and advertising of asbestos and asbestos-containing products. In pursuance of said financial motivation, said defendants, their ALTERNATE ENTITIES, and each of them, consciously disregarded the safety of "exposed persons" and in fact were consciously willing and intended to permit asbestos and asbestos-containing products to cause injury to "exposed persons" and induced persons to work with and be exposed thereto, including Plaintiff.

33. Plaintiff alleges that the aforementioned defendants, their ALTERNATE ENTITIES, and each of them impliedly warranted their asbestos and asbestos-containing products to be safe for their intended use but that their asbestos and asbestos-containing products, created an unreasonable risk of bodily harm to exposed persons.

34. Plaintiff further alleges his injuries are a result of cumulative exposure to asbestos and various asbestos-containing products manufactured, fabricated, inadequately researched, designed, modified, inadequately tested, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, rebranded, manufactured for others, packaged and advertised by the aforementioned defendants, their ALTERNATE ENTITIES, and each of them and that Plaintiff cannot identify precisely which asbestos or asbestos-containing products caused the injuries complained of herein.

35. Plaintiff relied upon defendants', their "alternate entities'", and each of their representations, lack of warnings, and implied warranties of fitness of asbestos and their asbestos-containing products. As a direct, foreseeable and proximate result thereof, Plaintiff have been injured permanently as alleged herein.

36. As a direct and proximate result of the actions and conduct outlined herein, Plaintiff have suffered the injuries and damages previously alleged.

WHEREFORE, Plaintiff prays judgment against defendants, their ALTERNATE ENTITIES, and each of them, as hereinafter set forth.

IV.

PRAYER

WHEREFORE, Plaintiff prays judgment against defendants, their ALTERNATE ENTITIES, and each of them in an amount to be proved at trial, as follows:

(a) For Plaintiff's general damages according to proof;

(b) For Plaintiff's loss of income, wages and earning potential according to proof;

(c) For Plaintiff's medical and related expenses according to proof;

(d) For Plaintiff's cost of suit herein;

(e) For exemplary or punitive damages according to proof;

(f) For damages for fraud according to proof; and

(g) For such other and further relief as the Court may deem just and proper, including costs and prejudgment interest.

Dated: 2/10/08

BRAYTON❖PURCELL LLP

By: _____
David R. Donadio
Attorneys for Plaintiff

JURY DEMAND

Plaintiff hereby demand trial by jury of all issues of this cause.

Dated: 2/10/08

BRAYTON❖PURCELL LLP

By: _____
David R. Donadio
Attorneys for Plaintiff

K:\Injured\106929\FED\Cmp FED (PI solo) no doe.wpd

11

COMPLAINT

EXHIBIT A

Plaintiff: **Rudolph Hannah**
Plaintiff's injuries: Plaintiff was diagnosed with asbestosis and asbestos-related pleural disease on or about October 2006. Defendants: Plaintiff contends that the asbestos-containing products to which he was or may have been exposed to were manufactured, supplied, distributed, installed and/or contracted for by Defendants. Plaintiff's exposure to asbestos occurred at the following times and places, and involved exposure to dust created by the contractors and the products of the entities listed below. The exposure includes, but is not limited, to the following presently known contractors and the manufacturers and distributors of asbestos-containing products:

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| U.S. Navy | Naval Training Center San Diego, CA | Trainee | 1960 |
| | USS ALUDRA (AF-55) | Boiler Mechanic | 1960-1964 |

Job Duties: Plaintiff trained at U.S. Naval Training Center in San Diego, California.
    Aboard the USS ALUDRA (AF-55), plaintiff worked in the boiler room. Plaintiff performed maintenance and repair work on a BABCOCK & WILCOX boiler. Plaintiff went inside of the boiler to remove and reinstall refractory materials. Plaintiff replaced gaskets on boiler doors, manhole covers and handhold covers. Plaintiff used GARLOCK and FLEXITALLIC gaskets. Plaintiff installed gaskets and packing on CRANE CO. and GROVE valves. Plaintiff used ANCHOR and JOHN CRANE packing. Plaintiff installed valves and gaskets on WESTINGHOUSE, WORTHINGTON, WARREN PUMPS and INGERSOLL-RAND pumps. Plaintiff removed lagging and insulation from pipes to repair steam leaks. Plaintiff replaced packing and gaskets on steam traps. Plaintiff currently contends that he was exposed to asbestos during this employment.

///

///

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| U.S. Navy | USS BUCK (DD-761) | Boiler Mechanic | 1965-1968 |
| | USS FRANK E. EVANS (DD-754) | Boiler Mechanic | 1968-1969 |
| | USS YELLOWSTONE (AD-27) | Boiler Mechanic | 1969-1972 |
| | Navy Recruiting Office Tampa, FL | Recruiter | 1972-1976 |
| | USS SARATOGA (CV-60) | Boiler Mechanic (Supervisor) | 1976-1979 |
| | USS DIXON (AS-37) | Damage Controlman (Assistant) | 1979 |
| | Naval Repair Facility Yokosuka, Japan | Inspector | 1979-1984 |
| | USS MIDWAY (CVA-41) | | 1979 |
| | USS CAPE COD (AD-43) | Manager | 1984 |
| | Naval Amphibious Base Coronado, CA | Manager | 1984-1987 |

Job Duties: Plaintiff worked in the boiler room aboard the USS BUCK (DD-761). Plaintiff performed maintenance and repair work on a BABCOCK & WILCOX boiler. Plaintiff went inside of the boiler to remove and reinstall refractory materials. Plaintiff scrubbed boiler tubes using brushes. Plaintiff replaced gaskets on boiler doors, manhole covers and handhold covers. Plaintiff used GARLOCK and FLEXITALLIC gaskets. Plaintiff installed gaskets and packing on CRANE CO. and GROVE valves. Plaintiff used ANCHOR and JOHN CRANE packing. Plaintiff installed valves and gaskets on WESTINGHOUSE, WORTHINGTON, WARREN PUMPS and INGERSOLL-RAND pumps. Plaintiff disassembled INGERSOLL-RAND force draft blowers to check propeller clearances and to repair steam leaks. Plaintiff recalls having to remove insulation pads in order to access his work. Plaintiff installed new insulation pads after his work was complete. Plaintiff replaced packing and gaskets on steam traps. Plaintiff recalls

the coworkers Douglas Adkins, address unknown; James Curtis George, address unknown.

Aboard the USS FRANK E. EVANS (DD-754), Plaintiff performed maintenance and repair work on a BABCOCK & WILCOX boiler. Plaintiff went inside of the boiler to remove and reinstall refractory materials. Plaintiff scrubbed boiler tubes using brushes. Plaintiff replaced gaskets on boiler doors, manhole covers and handhold covers. Plaintiff used GARLOCK and FLEXITALLIC gaskets. Plaintiff installed gaskets and packing on CRANE CO. and GROVE valves. Plaintiff used ANCHOR and JOHN CRANE packing. Plaintiff installed valves and gaskets on WESTINGHOUSE, WORTHINGTON, WARREN PUMPS and INGERSOLL-RAND pumps. Plaintiff removed lagging and insulation from pipes to repair steam leaks. Plaintiff replaced packing and gaskets on steam traps.

Aboard the USS YELLOWSTONE (AD-27), plaintiff worked in the boiler repair shop. In the shop, plaintiff performed maintenance and repair work on heat exchangers and condensers Plaintiff also performed prefab welding of exchanger, condensers and boiler parts. Plaintiff welded using LINCOLN and HOBART 6010 welding rods. Plaintiff used asbestos gloves and blankets. Plaintiff regularly boarded various other ships to perform boiler repairs. Plaintiff recalls disassembling and rebuilding BABCOCK & WILCOX, FOSTER WHEELER, COMBUSTION ENGINEERING, CLEAVER BROOKS and PEERLESS boilers. Plaintiff removed and replaced insulation, valves, gaskets, panels and tubing on these boilers. Plaintiff welded boiler panels and other boiler room equipment using LINCOLN and HOBART 6010 welding rods. Plaintiff used asbestos gloves and blankets. On many of these ships, plaintiff rigged out CRANE CO. heat exchangers and took them to the USS YELLOWSTONE (AD-41) for repairs and re-tubing.

Aboard the USS SARATOGA (CV-60), plaintiff supervised the boiler repair shop that operated and maintained the eight BABCOCK & WILCOX boilers on the ship. Plaintiff recalls performing maintenance and repair work on the boilers such as replacing gaskets, packing and installing valves and repairing lines. Plaintiff replaced packing and gaskets on CRANE CO. and GROVE valves. Plaintiff used GARLOCK and FLEXITALLIC gaskets. Plaintiff performed maintenance and repair work on WESTINGHOUSE force draft blowers. Occasionally, plaintiff went aboard other ships to perform boiler repairs.

Aboard the USS DIXON (AS-37), plaintiff worked as a Damage Control Assistant (DCA) managing and tracking the ship's damage control personnel and paperwork.

At the Naval Repair Facility in Yokusuka, Japan, plaintiff performed quality assurance inspection of various types of work done on various ships. Plaintiff recalls going aboard the USS MIDWAY (CVA-41) to inspect repair work on the flight deck and steam catapult system.

Aboard the USS CAPE COD (AD-43), plaintiff worked in an office tracking personnel and ship repair work.

At Naval Amphibious Base, Coronado, California, plaintiff worked from an office managing base transportation systems and vehicle mechanics.

Plaintiff currently contends that he was exposed to asbestos during this employment.

JS 44 - No. CAL#F (Rev. 4/97)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO)

## I.(a) PLAINTIFFS
RUDOLPH HANNA

## DEFENDANTS
GENERAL ELECTRIC COMPANY et al

**EDL**

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF
(EXCEPT IN U.S. PLAINTIFF CASES)

E-filing

County of Curry, State of Oregon

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED. State of Connecticut

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
David R. Donadio, esq.
Brayton <>Purcell, 222 Rush Landing Road, Novato, CA 94948
(415) 898-1555

ATTORNEYS (IF KNOWN)

**ADR**

## II. BASIS OF JURISDICTION (PLACE AN "✓" IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "✓" IN ONE BOX FOR PLAINTIFF
(For diversity cases only)        AND ONE BOX FOR DEFENDANT)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. ORIGIN (PLACE AN "✓" IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## V. NATURE OF SUIT (PLACE AN "✓" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury Med Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault Libel & Slander | ☒ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers Liability | | ☐ 640 RR & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth In Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholders Suits | ☐ 355 Motor Vehicle Product Liabiltiy | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 892 Economic Stabilization Act |
| | | | ☐ 730 Labor/Mgmt Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| | | | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motion to Vacate Sentence Habeas Corpus: | ☐ 791 Empl.Ret. Inc. Security Act | ☐ 870 Taxes (US Plaintiff or Defendant) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 530 General | | ☐ 871 IRS - Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing | ☐ 535 Death Penalty | | | |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 540 Mandamus & Other | | | ☐ 890 Other Statutory Actions |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 550 Civil Rights | | | |
| ☐ 290 All Other Real Property | | ☐ 555 Prison Condition | | | |

## VI. CAUSE OF ACTION (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)
Diversity of citizenship; 25 U.S.C. Section 1332

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
☒ CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ YES  ☐ NO

## VIII. RELATED CASE(S) IF ANY
PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE "NOTICE OF RELATED CASE".

## IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2) (PLACE A "✓" IN ONE BOX ONLY)
☒ SAN FRANCISCO/OAKLAND  ☐ SAN JOSE

DATE: 2/16/08

SIGNATURE OF ATTORNEY OF RECORD: x [signature]

JS 44 Reverse   (Rev. 12/96)

### INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS-44
Authority For Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.   (a) **Plaintiffs - Defendants**. Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

   (b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

   (c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II.  **Jurisdiction**. The basis of jurisdiction is set forth under Rule 8(a). F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "✓" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "✓" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

III. **Residence** (citizenship) of Principal Parties. This section of the JS-44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV.  **Origin**. Place an "✓" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

V.  **Nature of Suit**. Place an "✓" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section IV above, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

VI.  **Cause of Action**. Report the civil statute directly related to the cause of action and give a brief description of the cause.

VII. **Requested in Complaint**. Class Action. Place an "✓" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII. **Related Cases**. This section of the JS-44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases. Date and Attorney Signature.

**Date and Attorney Signature**. Date and sign the civil cover sheet.